UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                  :

UNITED STATES OF AMERICA,      :
       :
       :
   -against-             :     ORDER
       :     10-CR-74 (JFB)
       :

VIDAL ESPINAL,          :
       :
      Defendant.    :
       :
------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 12 2021 ★
LONG ISLAND OFFICE

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

On January 14, 2013, defendant Vidal Espinal pleaded guilty to Count Fifty-Three of the Fourth Superseding Indictment, charging him with Causing the Death of Nestor Moreno Through the Use of a Firearm, in violation of 18 U.S.C. § 924(j)(1).  On July 10, 2013, the Court sentenced the defendant to 405 months' imprisonment for the murder of Nestor Moreno, to be followed by three years of supervised release.

On December 28, 2021, the Court received the defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Dkt. No. 1733.  The defendant also filed a motion for appointment of counsel (Dkt. No. 1734), which the Court denied on May 28, 2021 (Dkt. No. 1741).  On June 10, 2021, the Court received a supplemental motion for compassionate release. Dkt. No. 1742.  The defendant seeks release (or, in the alternative, home confinement) based on the COVID-19 pandemic and its effects on his mental health, and based on family circumstances. The government filed its opposition to the motion on July 2, 2021.  Dkt. No. 1750.  No reply was received by the due date of July 30, 2021.  The Court has considered all of the submissions, including the initial motion for compassionate release and the supplemental motion.

For the reasons set forth below, the defendant's motion for compassionate release is denied.[1]

## I.   **Applicable Law**

As a threshold matter, to file a motion for compassionate release, a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). With respect to the exhaustion requirement, the Second Circuit recently clarified that it "is not a jurisdictional limitation on a court's power to consider an inmate's motion for compassionate release. Rather, § 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule that may be waived or forfeited by the government." *United States v. Saladino*, —F.4th—, 2021 WL 3376973 (2d Cir. Aug. 4, 2021). For a *pro se* movant, this motion should "be construed liberally to raise the strongest arguments [it] suggest[s]," yet the defendant nonetheless bears the burden of first establishing that he is eligible for compassionate release and then demonstrating that he has exhausted administrative remedies in pursuing the sentence reduction. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 479 n.3 (2d Cir. 2006); *United States v. Harrison*, No. 14 CR. 167 (NRB), 2021 WL 1144820, at *1 (S.D.N.Y. Mar. 24, 2021).

Under Section 3582(c)(1)(A), district courts have the discretion to grant compassionate release where there are "extraordinary and compelling reasons" to do so. 18 U.S.C. § 3582(c)(1)(A)(i). District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (holding that "[b]ecause Guideline §

---

[1] The Court notes the defendant has filed two separate motions under 18 U.S.C. §3582(c)(2) and 28 U.S.C. § 2255, respectively, which both remain pending, and are not addressed by this Order.

1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling").

Courts must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Even if extraordinary and compelling reasons exist, a court may deny a compassionate release motion "if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." *United States v. Davies*, No. 17-CR-57, 2020 WL 2307650, at *2 (E.D.N.Y May 8, 2020) (internal quotation marks omitted).

## II.   Discussion

The defendant asserts that he is eligible for compassionate release under Section 3582(c)(1)(A) on several grounds. As a threshold matter, the government does not challenge the Section 3582(c)(1)(A) exhaustion requirement. Thus, the Court proceeds to address the merits.

With respect to the "extraordinary and compelling circumstance" requirement, the defendant argues that, though he has recovered from a previous COVID-19 infection, he now suffers from depression and anxiety because he is confined to his cell with little opportunity to communicate with his family, to go outside, and has not been able to receive mental health services. Dkt. No. 1742 at 1. Additionally, the defendant argues that he faces a continued risk of COVID-19 infection because staff members at the Federal Correctional Institution Gilmer's ("FCI Gilmer") have declined to get the available vaccine and have refused to wear CDC-recommended face coverings. *Id.* at 2. Moreover, the defendant indicates that his life and medical health are endangered by FCI Gilmer's lack of antibacterial soap, and his inability to purchase expensive hand sanitizer and cleaning supplies from the prison's commissary. *Id.* at 1.

3

The defendant also seeks release based on the poor health of his mother. Dkt. No. 1742 at 1. The defendant states that his mother, who is in her early seventies, suffers from a tumor in her head which causes deafness and major headaches.[2] *Id.* According to the defendant, his mother, who also suffers from high blood pressure and heart complications, is disabled and unable to care for herself. *Id.* The defendant argues that he is needed at home to take care of his mother, and to seek proper medical attention of his own. *Id.*

As set forth below, the Court concludes that the defendant has failed to demonstrate that his medical conditions and the general threat of COVID-19 in the correctional facility provide an "extraordinary and compelling" reason for his early release, even considering the COVID-19 pandemic and its impact on the federal prison system. 18 U.S.C. § 3582(c)(1)(A)(i). The Court similarly concludes that his mother's serious medical conditions and family circumstances also do not demonstrate an "extraordinary and compelling" reason for release (even when considered in combination with the defendant's COVID-19 arguments).

First, apart from contracting COVID-19 (an ailment from which he has since recovered) the defendant is in good health. He has not identified any serious medical or physical conditions, nor any chronic ailment, that would warrant granting his motion for compassionate release. *Cf.*, *United States v. Ebbers*, 432 F. Supp. 3d 421, 433 (S.D.N.Y. 2020) (granting compassionate release to a 78-year-old with macular degeneration, cardiomyopathy, and other significant health issues); *United States v. Asaro*, No. 17-CR-127 (ARR), 2020 WL 1899221, at *2, 8 (E.D.N.Y. Apr. 17, 2020) (granting compassionate release to an 85-year-old, unvaccinated inmate with an "extensive list of medical conditions" who had served nearly three-fourths of his sentence); *United*

---

[2] The age of the defendant's mother is in dispute. The defendant claims in his motion that his mother is in her early seventies. The government, however, indicates in its response that the defendant's mother, who the PSR stated was 50 years old in 2013, would be approximately 58 years old today. Dkt. No. 1750 at 11, n. 7. This factual question is immaterial, however, as any difference in age does not alter the Court's analysis.

4

*States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481 at \*9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release to an incarcerated person who "suffer[ed] from hypertension, sleep apnea, high blood pressure, and high cholesterol"). Second, although the Court does not discount the significant consequences of poor mental health, the defendant's depression and anxiety do not meet Section 3582(c)(1)(A)'s "extraordinary and compelling" requirement based upon this record.

Moreover, any threat COVID-19 poses to the defendant's health has been significantly mitigated by his recent vaccination. It is undisputed that the defendant received his first and second doses of the Pfizer COVID vaccine in April of 2021. Though vaccination does not provide a one-hundred-percent assurance that the defendant will not contract COVID-19 again, it is "highly effective at protecting vaccinated people against symptomatic and severe COVID-19." Centers for Disease Control and Prevention, *Public Health Recommendation for Fully Vaccinated People*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html        (last visited August 12, 2021). Espinal has provided no evidence to the contrary. Further, as of August 12, 2021, 0 inmates and 0 of FCI Gilmer's staff have tested positive for COVID-19. Federal Bureau of Prisons, *COVID-19 Cases*, www.bop.gov/coronavirus (last visited August 12, 2021). Therefore, the defendant has failed to demonstrate that the purported inadequacies of the precautionary measures at FCI Gilmer regarding COVID-19 provide "extraordinary and compelling reasons" for his release.  18 U.S.C. § 3582(c)(1)(A)(i).

Second, his mother's illnesses and the defendant's family circumstances, while very unfortunate, do not rise to the "extraordinary and compelling" standard. As a threshold matter, the government notes that the defendant has five other siblings, none of whom are incarcerated, who can presumably provide their mother with the care she needs in the defendant's absence. Dkt. No.

5

1750 at 11. The defendant has provided no evidence to the contrary. In any event, this type of situation, which is unfortunately common when defendants are incarcerated, does not rise to an extraordinary and compelling reason for his release under the circumstances present here. *See, e.g., United States v. Mojica*, No. 19-CR-629 (CS), 2020 WL 6746478, at *1 (S.D.N.Y. Nov. 16, 2020) ("While I sympathize with Defendant's family members, hardship on the family almost always results from serious criminal conduct, and rarely rises to the level of extraordinary and compelling.").

Furthermore, even assuming *arguendo* that these extraordinary and compelling reasons for compassionate release under Section 3582(c)(1)(A) exist, the Court in its discretion would not release the defendant because the Section 3553(a) factors weigh overwhelmingly against his release. In particular, the defendant pleaded guilty to the murder of an innocent security guard (Mr. Moreno). As the Court noted at sentencing, the defendant's criminal conduct was magnified in that he committed such conduct to aid the objectives of the violent street gang MS-13—an organization that "terrorize[s] the community and make[s] law abiding citizens afraid to walk" their own streets in fear of this type of gang activity. Dkt. No. 1750-2 at 18. Thus, the Court concluded that the 405 months' imprisonment is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide a deterrence to criminal conduct, and to provide just punishment for the murder of Mr. Moreno, as well as to protect the public from further crimes of the defendant. *Id.* at 17-18. The Court's view as to the importance of these factors, as well as the other reasons for the original sentence, has not changed. Moreover, the defendant has only served less than half his sentence. Given the defendant has over 15 years' imprisonment remaining, his release at this juncture would not adequately reflect the seriousness of his violent criminal conduct or the harm caused by the conduct (namely, the loss of Mr. Moreno's life), nor would it sufficiently

protect society or afford adequate deterrence to the defendant and others who engage in this type of extremely violent criminal conduct. The Court is also mindful that granting the motion could result in unwarranted sentence disparities among similarly situated defendants.

The Court recognizes the defendant's statement regarding his disassociation with the MS-13 gang, as well as his personal growth while incarcerated, are extremely important. *See* Dkt. No. 1742 at 2 ("Petitioner concedes the nature and severity of his offense poses a significant obstacle to his release even now. At the time of the offense, he undoubtedly posed a threat to the community. He was much younger and set on impressing his peers through acts of bravado, arrogance, and violence, and climbing the ranks of the MS-13 criminal organization. He has grown tremendously during his confinement and no longer holds these ideals."). The Court also acknowledges, as the defendant points out, that the COVID-19 restrictions in prison facilities, may prevent him from receiving "education or vocational training, medical care or other correctional treatment" that would otherwise be available in the absence of the pandemic. *See* Dkt. No. 1750-2 at 16; Dkt. No. 1742 at 2, 3. However, those factors do not alter the Court's determination in light of the combination of other Section 3553(a) factors (discussed above) that still overwhelmingly warrant denial of his motion.

In short, even assuming the defendant has demonstrated "extraordinary and compelling" reasons for his release because he is at a heightened risk of contracting COVID-19 and is needed at home to care for his ailing mother, his health and family circumstances do not outweigh the Section 3553(a) factors that led this Court to impose 405 months' imprisonment. 18 U.S.C. § 3582(c)(1)(A)(i).

Finally, the defendant requests, in the alternative, that he be placed on home confinement for the remainder of his sentence pursuant to Section 12003(b)(2) of the Coronavirus Aid, Relief,

7

and Economic Security ("CARES") Act of 2020. Dkt. No. 1742 at 1. As the government correctly notes in its opposition, this Court lacks the authority to grant home confinement under the CARES Act. *See* Dkt. No. 1750 at 4, n. 3. *See, e.g., United States v. Ogarro,* No. 18-CR-373-9 (RJS), 2020 WL 1876300, at \*6 (S.D.N.Y. Apr. 14, 2020) (stating that the authority under the CARES Act to grant home confinement rests "exclusively within the discretion of the [Bureau of Prisons]"); *United States v. Casado*, No. 19-CR-6156-FPG, 2020 WL 3410455, at \*1 (W.D.N.Y. June 22, 2020) (same); *United States v. Rodriguez*, 16-CR-167(LAP), 2020 WL 1866040, at \*4 (S.D.N.Y. Apr. 14, 2020) ("The Bureau of Prisons, not the Court, has the sole authority to prescribe home confinement post-incarceration."); *United States v. Brady*, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at \*2, n. 2 (S.D.N.Y. May 15, 2020). However, district courts do have the discretion to grant compassionate release and then modify a defendant's supervised release term to include a term of home detention. *See, e.g., United States v. Amarrah*, 458 F.Supp.3d 611, 620-21 (E.D. Mich. 2020). Thus, although the Court recognizes the availability of the home detention option in that form as a discretionary matter (apart from the CARES Act), the Court denies the alternative request for the same reasons articulated above, with respect to the balancing of the Section 3553(a) factors, which apply equally even if the defendant were placed on home confinement.

Accordingly, for the reasons stated above, the Court, in its discretion, the defendant's motion for compassionate release (or, in the alternative, for home confinement) is denied. The Clerk of the Court shall mail a copy of this order to the defendant.

SO ORDERED

s/ Joseph F. Bianco

JOSEPH F. BIANCO
UNITED STATES CIRCUIT JUDGE
(sitting by designation)

Dated: August 12, 2021
     Central Islip, New York