UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Nº 10-CR-0074 (JFB)

VIDAL ESPINAL,

Petitioner,

VERSUS

UNITED STATES OF AMERICA,

Respondent.

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 08 2025 ★
LONG ISLAND OFFICE

**MEMORANDUM AND ORDER**
August 8, 2025

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

Petitioner Vidal Espinal ("Espinal" or "petitioner"), proceeding *pro se*, moves to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. On January 14, 2013, petitioner pled guilty to causing a death through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1). On July 10, 2013, the Court sentenced petitioner to 405 months' imprisonment, to be followed by three years' supervised release.

In his petition, Espinal asserts his conviction and sentence should be vacated: (1) based on the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015) and *United States v. Davis*, 588 U.S. 445 (2019); and (2) because his counsel provided ineffective assistance of counsel with respect to his guilty plea, thereby thwarting the knowing and voluntary nature of his plea.

For the reasons that follow, the petition is denied in its entirety without a hearing.

I. BACKGROUND

A. Facts

The following facts are adduced from the instant petition and underlying record.

On January 14, 2013, petitioner pled guilty to Count 53 of the Fourth Superseding Indictment, charging him with causing the death of Nestor Moreno through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1). (Dkt. No. 1143).

At the beginning of the plea proceeding, the Court asked a series of questions to confirm that petitioner was competent to

proceed with the plea. (Pl. Tr. at 4–5).[1] Petitioner stated that he discussed any available defenses with his defense counsel and that he was satisfied with counsel's representation. (Pl. Tr. at 5). The Court then explained the constitutional rights that petitioner was waiving by choosing to plead guilty. (Pl. Tr. at 5–9).

Next, the Court summarized the charge to which petitioner was pleading guilty, stating:

> [I]n [C]ount 53, you're charged with causing the death of Nestor [Moreno] through the use of a firearm. In summary ..., you and others knowingly and intentionally caused the death of Mr. [Moreno] through the use of a firearm knowingly and intentionally with malice aforethought and did in fact cause such death.

(Pl. Tr. at 9). The Court also discussed the elements for that crime. (Pl. Tr. 9–12). Additionally, the Court reviewed the maximum penalties for the crime to which he was pleading guilty, including a maximum term of life imprisonment, and petitioner stated that he understood those penalties. (Pl. Tr. at 12–13).

The Court then confirmed that petitioner had entered into a plea agreement with the government and that the agreement was translated into Spanish word-for-word before he signed it. (Pl. Tr. at 16–17). The Court specifically noted that the plea agreement included an appellate waiver, in which petitioner agreed to "not file an appeal or otherwise challenge by petition under Section 2255, or any other provision, the conviction or sentence in this case in the event [the Court] impos[ed] a term of imprisonment of 480 months or below." (Pl. Tr. at 16–17).

With respect to the factual basis for the plea, petitioner admitted that he had been a member of La Mara Salvatrucha street gang ("the MS-13") since 2010, and that the gang was involved in criminal activities in other states and other countries. (Pl. Tr. at 19). As to his participation in the Moreno murder, petitioner stated the following:

> On March 6, 2010, I, along with other MS members, drove to El Rancho bar in Hempstead, New York, for the purpose of killing a security guard at El Rancho bar who had got into an altercation with other MS-13 members in February 2010. When we arrived, I got out of the car with two of the other MS-13 members and I was armed with a .22 caliber handgun. We conducted surveillance of the bar, saw the bouncer, returned to the car and talked to the other MS-13 members, and then went back to the bar and I shot the security guard in the head. I had since learned that the security guard's name was Nestor [Moreno], and that he died after I shot him. I participated in the murder

---

[1] Numbers in parentheses preceded by "Pl. Tr." refer to pages in the January 14, 2013 transcript of petitioner's guilty plea hearing, which is attached as Exhibit 2 to the government's opposition to Espinal's petition.

2

of a security guard in order to maintain and increase my position in the MS-13, and afterwards I was given more respect from other MS-13 members because I had put in work for the gang.

(Pl. Tr. at 19–20).

The Court then asked petitioner a series of questions to elicit more facts regarding the circumstances surrounding the murder and the government explained what its proof would have been for each element of the offense if petitioner chose to proceed to trial. (Pl. Tr. at 20–24).

In response to questioning from the Court, petitioner also confirmed that no one had offered him any inducements, or threatened him, to enter into the plea agreement or plead guilty, and that he was pleading voluntarily and of his own free will. (Pl. Tr. at 18, 25).

Based upon the questioning at the plea proceeding, the Court found that petitioner was knowingly and voluntarily waiving his rights, and that his plea was supported by an independent basis in fact for each of the elements of the offense, and accepted his guilty plea to Count 53. (Pl. Tr. at 25).

On July 10, 2013, petitioner was sentenced. Before his sentence was imposed, the Court confirmed that, under the United States Sentencing Guidelines, the petitioner's total offense level was 41, with a Criminal History Category I, resulting in an advisory range of 324 months to 405 months' imprisonment. (Sent. Tr. at 6-7).[2] After carefully weighing the factors under 18 U.S.C. § 3553(a), the Court sentenced petitioner to a determinate term of 405 months' imprisonment, to be followed by three years of post-release supervision. (Sent Tr. at 15–22).

B. Procedural History

Petitioner has moved to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, on the grounds that: (1) his conviction is invalid in light of the Supreme Court holdings in *Davis* and *Johnson*, and RICO conspiracy cannot serve as a crime of violence under 18 U.S.C. § 924(c)(3)(a); and (2) he was denied effective assistance of counsel in connection with his guilty plea. (Dkt. No. 1704). The government filed its response, arguing that: (1) petitioner's Section 2255 petition is procedurally barred; (2) the holdings in *Davis* and *Johnson* do not invalidate the petitioner's 18 U.S.C. § 924(j)(1) conviction; and (3) petitioner's ineffective assistance of counsel is untimely and baseless. (Dkt. No. 1708). Petitioner filed a reply, including a request for an evidentiary hearing. (Dkt. No. 1717).

The Court has fully considered the parties' submissions, as well as the underlying record.

II. LEGAL STANDARD

A. Section 2255

Pursuant to 28 U.S.C. § 2255, a prisoner sentenced in federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when the petitioner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess

---

[2] Numbers in parentheses preceded by "Sent. Tr." refer to pages in the July 10, 2013 transcript of petitioner's sentencing proceeding, which is attached as Exhibit 3 to the government's opposition to Espinal's petition.

3

of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a claim that petitioner raises in a Section 2255 motion has not been previously raised on direct appeal, generally, the claim is procedurally barred unless the petitioner can show cause and prejudice or actual innocence. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998). However, this bar does not apply to claims of ineffective assistance of counsel. The Supreme Court has stated that "in most cases a motion brought under [Section] 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro*, 538 U.S. at 504.

Where a petitioner files a Section 2255 petition *pro se*, the Court construes the petitioner's claims liberally. *See Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) (noting a *pro se* complaint is to be "liberally construed in [the petitioner's] favor"). A petitioner challenging his conviction on the ground of ineffective assistance of counsel "[bears] the burden of proving his claim." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).

With respect to the issue of an evidentiary hearing, Section 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28 U.S.C. *foll.* § 2255. The Second Circuit has made clear that "[t]o warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)). The Second Circuit has provided guidance on how a district court should determine when an evidentiary hearing is necessary. *See id.* at 213–15. In particular, the Court noted that, given the absence of pre-motion discovery in a Section 2255 case, "a petitioner may need only to identify available sources of relevant evidence rather than obtain it as in civil cases or seek a discovery order from the court." *Id.* at 213–14.

Further, "the district court may use methods under Section 2255 to expand the record without conducting a full-blown testimonial hearing." *Chang*, 250 F.3d at 86. Thus, there are scenarios where the district court can exercise its "discretion to choose a middle road that avoid[s] the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing" and may determine that a full hearing "would add little or nothing to the written submissions." *Id.*

B. Ineffective Assistance of Counsel

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of

4

reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The first prong requires a showing that counsel's performance was deficient. To demonstrate deficient performance, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' determined according to 'prevailing professional norms.'" *Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 688). However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance, if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 588 (quoting *Strickland*, 466 U.S. at 690). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690–91).

The second prong focuses on prejudice to a petitioner. A petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "undermine[] confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors ... is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63—64 (2d Cir. 2005) (first alteration in original) (quoting *Strickland*, 466 U.S. at 695). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Additionally, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet, v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)). "In the context of a guilty plea, *Strickland's* prejudice prong requires a defendant to demonstrate a reasonable probability that, 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Munson v. Rock*, 507 F. App'x 53, 56 (2d Cir. 2013) (summary order) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

5

The party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *See United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

### III. DISCUSSION

Petitioner argues that he is entitled to habeas relief on the grounds that (1) his conviction and sentence is now invalid under *Davis* and *Johnson*, and (2) his counsel provided ineffective assistance of counsel with respect to his guilty plea. For the reasons that follow, the Court concludes that petitioner's claims are without merit. In doing so, the Court has determined in its discretion that no evidentiary hearing is warranted because the underlying record conclusively demonstrates that his claims are implausible and he is entitled to no relief under Section 2255.

A. Collateral Attack Waiver

As an initial matter, the government argues that petitioner's waiver of his right to appeal prevents the Court from considering petitioner's claims. (*See* ECF No. 1708 at 9–10). Generally, "a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." *United States v. Moore*, 306 F. App'x 628, 629 (2d Cir. 2009) (summary order) (internal quotations marks and citation omitted). Such a waiver applies to petitions for habeas relief under 28 U.S.C. § 2255. *See, e.g., Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001); *Lisnoff v. United States*, No. 05-cv-1209 (NGG), 2006 WL 1367413, at *2–3 (E.D.N.Y. May 18, 2006).

In the instant case, petitioner entered into a plea agreement, which included an agreement not to file an appeal, or otherwise challenge his conviction or sentence under Section 2255 or any other provisions, if his sentence was 480 months' imprisonment or less. (Pl. Tr. at 17; *see also* Plea Agreement, at 4–5).[3] Further, petitioner's guilty plea demonstrates that petitioner executed the waiver knowingly and voluntarily. In particular, during the plea hearing, the Court reviewed the waiver provision with petitioner, confirming he understood the content of the waiver and that he was freely waiving these rights:

> The Court: In paragraph 4 you agree not to file an appeal or otherwise challenge by petition under Section 2255, or any other provision, the conviction or sentence in this case in the event I impose a term of imprisonment of 480 months or below. In other words, if I sentence you to 480 months in prison, or anything less than 480 months in prison, you're giving up your right to appeal or otherwise challenge in any way the conviction or sentence in this

---

[3] The Plea Agreement is attached as Exhibit 1 to the government's opposition to Espinal's petition

case. Do you understand that?

The Defendant: Yes.

The Court: Are you waiving that right knowingly and voluntarily?

The Defendant: Yes.

(Pl. Tr. at 17–18).

Accordingly, upon review of the record, the Court concludes that the waiver is enforceable, as the record reflects that petitioner knowingly and voluntarily waived his appellate rights.

Thus, petitioner's collateral attack waiver applies to his challenge to his conviction under *Davis* and *Johnson*. However, insofar as petitioner raises ineffective assistance of counsel claims, these claims survive the guilty plea or an appellate/collateral attack waiver. *See Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008).

B. Challenge under *Davis* and *Johnson*

In an abundance of caution, the Court assumes *arguendo* that the waiver does not apply and addresses the merits of petitioner's challenge to his conviction under *Davis* and *Johnson*.

Petitioner contends that his Section 924(c) conviction must be vacated because Count 2, RICO conspiracy, cannot serve as a valid predicate offense as it no longer qualifies as a crime of violence after the Supreme Court's holding in *Davis*. (ECF No. 1704 at 11–12). The government argues that petitioner's conviction on Count 53 was predicated on Count 51, murder in aid of racketeering, not RICO conspiracy, which satisfies the elements clause of Section 924(c)(3)(a). (ECF No. 1708 at 10–11). The government further contends that murder is sufficient to trigger the elements clause of Section 924(c). (*Id.* at 11).

The Court agrees with the government and finds that petitioner's argument is without merit.

Section 924(c) provides for mandatory minimum sentences for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). The statute defines an offense as a "crime of violence" in two different ways. First, under the "elements clause," also sometimes referred to as the "force clause," an offense constitutes a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A). Second, the "residual clause," includes any offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B).

However, the Supreme Court held that the residual clause is unconstitutionally vague. *See Davis*, 588 U.S. at 470. Accordingly, only felony offenses that have as "an element the use, attempted use, or threatened use of physical force . . . are valid predicate crimes of violence to sustain a [Section] 924(c) conviction." *Stone v. United States*, 37 F.4th 825, 828 (2d Cir. 2022) (internal quotation marks omitted).

"To determine whether an offense is a crime of violence" under the elements clause, "courts employ what has come to be known as the 'categorical approach.'" *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). Under this approach, a court does not consider the

7

specific facts of the offense. *See id.* Instead, a court must "identify the minimum criminal conduct necessary for conviction under a particular statute by look[ing] only to the statutory definitions–i.e, the elements–of [the] offense." *United States v. Pastore*, 83 F.4th 113, 118 (2d Cir. 2023) (internal quotation marks and citation omitted). Moreover, "[f]or certain statutes that list elements in the alternative, and thereby define multiple crimes, [the Second Circuit has] deemed the statute to be divisible and applied a modified categorical approach," under which a court "may review a limited class of documents' from the record of conviction to determine what crime, with what elements, a defendant was convicted of." *Id.* at 118–19 (internal quotation marks and citations omitted). After doing so, the court "then return[s] to the categorical analysis and compare[s] the elements of the offense of conviction with [S]ection 924(c)(3)(A)'s definition of a crime of violence." *Id.* at 119 (internal quotation mark and citation omitted).

Thus, to determine whether a Section 924(c) charge is based on a crime of violence, "[the Court] must determine whether any one of the [S]ection 924(c) predicate offenses listed in the indictment," such as conspiracy to commit murder in aid of racketeering and murder in aid of racketeering, "categorically involve[s] the use of force." *Id.* (internal quotation marks and citation omitted).

The Second Circuit has made clear that the modified categorical approach applies to substantive offenses under Section 1959. *Id.* Moreover, the Second Circuit has held that conspiracy to murder in aid of racketeering does not categorically qualify as a crime of violence. *See Stone*, 37 F.4th at 828; *Pastore*, 83 F.4th at 119. However, "murder in aid of racketeering remains a categorical crime of violence." *Stone*, 37 F.4th at 828.

Here, although Count 53 incorporated the predicate act of murder conspiracy (as charged in Count 50), it also clearly incorporated Count 51–which charged petitioner's participation in the murder of Nestor Moreno in aid of racketeering, in violation of Section 1959. Moreover, at the guilty plea proceeding, the Court explicitly noted that the government had to prove the underlying murder for petitioner to be found guilty of Count 53, and that he committed the murder with the firearm to maintain or increase his position within the MS-13, as required under Section 1959. (Pl. Tr. at 10–12). In addition, in his allocution, petitioner admitted to committing the murder of Mr. Moreno, with the firearm, to maintain and increase his position in the MS-13 gang.

In sum, under these circumstances, the fact that the firearms count, in addition to the substantive murder, also referenced the murder conspiracy does not raise any constitutional issue under *Davis*. *See, e.g.*, *United States v. Walker*, 789 F. App'x 241, 244–45 (2d Cir. 2019) (summary order) (holding that, where the defendant pled guilty to a [Section] 924(c) count with "convictions for both conspiracy and substantive Hobbs Act robbery as the predicate crimes of violence," the substantive Hobbs Act robbery provides the necessary predicate under *Davis* (emphasis omitted)); *see also Gomez v. United States*, 87 F.4th 100, 109 (2d Cir. 2023) ("The jury returned a verdict indicating that it found that both the murder of and the conspiracy to murder Santiago had been proven beyond a reasonable doubt. Accordingly, the racketeering conviction is for a crime of violence because one of its predicates—murder under New York law—qualifies as a crime of violence." (emphasis and citation omitted)). Thus, this case is entirely distinct

8

from instances where the defendant allocuted only to conspiracy. *Cf. United States v. Biba*, 788 F. App'x 70, 72 (2d Cir. 2019) (summary order). Instead, it is clear from the plea hearing that petitioner was properly advised regarding the underlying substantive murder in aid of racketeering offense that formed the predicate of the firearm charge, and then admitted to his participation in that murder. Because substantive murder fits within the definition of crime of violence under the elements-only categorical approach, petitioner's argument fails on the merits.

C. Ineffective Assistance of Counsel

Petitioner asserts that his counsel provided ineffective assistance by coercing and inducing him to sign a plea agreement, which he argues thwarted the knowing and voluntarily nature of his guilty plea. (ECF No. 1704 at 15–19). As set forth below, the Court concludes that these arguments are without merit.[4]

1. Materially Misleading Statement and Awareness of Sentencing Outcomes

Petitioner argues that his counsel provided ineffective assistance because he made erroneous representations about the presiding judge regarding the judge's leniency in sentencing, which petitioner claims induced him to plead guilty. (*Id.* at 15). Additionally, petitioner asserts that counsel did not explain the Guidelines regarding sentencing and failed to translate the plea agreement to Spanish. (*Id.* at 16).

When considering the validity of a guilty plea, courts look to the sworn statements made during a plea allocution, noting that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Clearly, "[c]laims by petitioners that their pleas were involuntarily made due to the erroneous advice or unrealized promises made by counsel 'afford an all too easy avenue for the invalidating of convictions on pleas of guilty.'" *Hernandez v. United States*, 839 F. Supp. 140, 143 (E.D.N.Y. 1993) (quoting *United States v. Horton*, 334 F.2d 153, 154 (2d Cir. 1964)). Further, "[a] criminal defendant's self-inculpatory statements made under oath at [a] plea allocution . . . are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) (internal citations omitted).

Here, petitioner's claims of ineffective assistance of counsel are belied by his own sworn statements on the record. The Court advised petitioner of each of these considerations during his plea hearing and, under oath, petitioner confirmed that he understood:

> The Court: First, on page 3, it contains a calculation of the advisory guideline range in this case and I want to emphasize to you, as [I] said a moment ago, that [] calculation is not binding on me. It may turn out that [the] calculation, the advisory range, is different than the one in the plea agreement. If it is, you don't get an opportunity to get your plea back, and whatever calculation it turns out to be,

---

[4] As a threshold matter, the Court agrees with the government that petitioner's claim of ineffective assistance of counsel is time-barred because it was not filed within the one-year limitation period set forth in 28 U.S.C. § 2255(f) but rather was filed years after the Second Circuit dismissed his appeal. However, in an abundance of caution, the Court addressed the merits.

9

as I said a moment ago, it's advisory and I can sentence you above or below those guidelines. Do you understand that?

The Defendant: Yes.

* * *

The Court: Has anyone offered you any inducement, or threatened you, or forced you into this agreement or to plead guilty?

The Defendant: No.

The Court: Has anyone made any promise to you as to what your sentence will be?

The Defendant: No.

* * *

The Court: Mr. Espinal, did you sign this agreement in the presence of your attorney today?

The Defendant: Yes.

The Court: Was it translated for you word-to-word before you signed it?

The Defendant: Yes.

The Court: Did you fully understand it before you signed it?

The Defendant: Yes.

(Pl. Tr. at 16–18).

In short, other than the conclusory and self-serving statements in his petition, Espinal offers no evidence to contradict his sworn statements at the guilty plea proceeding. Thus, his claims of ineffective assistance of counsel fail on the merits and there is no basis to disturb his guilty plea, which was knowingly and voluntarily entered.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2255. In doing so, the Court concludes in its discretion that no evidentiary hearing is warranted due to the clearly meritless nature of these claims. Accordingly, this petition is denied in its entirety.

Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall mail a copy of this Memorandum and Order to the petitioner.

SO ORDERED.

/s/ Joseph F. Bianco

JOSEPH F. BIANCO
United States Circuit Judge
(sitting by designation)

Dated: August 8, 2025
Central Islip, New York

* * *

Petitioner is proceeding *pro se*. Allenwood Low FCI, Inmate Mail/Parcels, P.O. Box 1000, White Deer, Pennsylvania 17887.

Respondent is represented by Assistant United States Attorneys John Durham and Megan Farrell, United States Attorney's Office, Eastern District of New York, 610 Federal Plaza, Central Islip, New York 11722.

10